No. 18,263.

VIOLA S. BROOMHALL *v.* EDGEMONT MINING CO. INC.

(340 P. [2d] 869)

Decided June 22, 1959.

Mr. WILLIAM R. YOUNG, Mr. EDWARD J. McHUGH, for plaintiff in error.

Mr. RICHARD H. SIMON, for defendant in error.

*En Banc.*

MR. JUSTICE SUTTON delivered the opinion of the Court.

THE parties are here in the same order they appeared in the trial court and we will refer to them as they there appeared or by name.

Plaintiff, Viola S. Broomhall, brought this action seeking a declaratory judgment to confirm her ownership of an interest in a certain mining lease, known as the "Gould Lease," upon property located in Fall River County, South Dakota. The complaint alleged execution of a mineral lease from the owners of the property to one Brockman, and an assignment of a ten per cent interest therein by said Brockman to Walter L. Broomhall, the husband of plaintiff, on March 31, 1952. It was further alleged that Broomhall assigned his interest to plaintiff on March 31, 1952; that on May 9, 1952, the said Walter L. Broomhall executed a general release to the defendant Edgemont Mining Company and as a result thereof the defendant claims that it is the owner of the said ten per cent interest in the Gould lease and threatens to withhold her share of the profits from the sale of ore from said Gould lease. She prayed for a judgment declaring her interest in the Gould lease to be in no way affected by the general release made by Walter L. Broomhall to defendant.

Defendant by its answer admitted the execution and delivery of an interest in the Gould lease to the plaintiff's husband, and alleged that on May 9, 1952, Walter L. Broomhall, in consideration of the payment to him of the sum of $2468.25, remised and released all rights and claims against defendant and in the said Gould lease, and at such time represented that he was the sole owner of such interest. By leave of court Walter L. Broomhall was brought into the case as a third party defendant by complaint alleging that on March 31, 1952, one Brockman assigned to the said Walter L. Broomhall an undivided 10% interest in the Gould lease, and that plaintiff is the wife of said Broomhall, who, on the 9th day of May, 1952, representing himself to be the sole owner of said interest, assigned all his right, title and

interest therein to the Edgemont Mining Company in consideration of the payment to him of the sum of $2468.25. The prayer is that the plaintiff and the third party defendant be adjudged to have no interest in the Gould lease, and such other and further relief as may seem proper.

Trial was to the court resulting in findings and judgment favorable to the defendant, and plaintiff is here by writ of error seeking reversal.

The evidence shows that during the month of March 1952, Walter L. Broomhall, husband of the plaintiff, a lawyer and employee of the United States Internal Revenue Department, had occasion to contact one E. J. Brockman concerning governmental business. Brockman, with others, was then engaged in obtaining leases and promoting development of uranium properties in Fall River and Custer Counties, South Dakota, in the name of Edgemont Mining Company, the name of a yet to be formed corporation. All such leases obtained were negotiated in the name of E. J. Brockman in behalf of himself and his associates. As a result of this contact Broomhall became interested in the activities of Brockman and his associates, and they being without funds to secure desired leases, Broomhall agreed to advance certain funds for that purpose. Among the leases so obtained was the Gould lease, the subject matter of this controversy, for which Broomhall advanced $1,000.00. On March 26, 1952, the Gould lease was negotiated by Brockman, and on March 31, 1952, he assigned to Broomhall an undivided 10% interest therein, represented by a written instrument acknowledged on the same day and recorded on April 10, 1952, in Fall River County, South Dakota. On the day he received his assignment of an interest in the Gould lease, March 31, 1952, Broomhall asserts that he forthwith assigned the same to the plaintiff. This assignment was recorded May 19, 1952, some ten days after the settlement hereafter referred to was effected. On August 8, 1952, the plaintiff assigned all her interest in

the Gould lease to Carroll W. Parmeter, and it is claimed that thereafter Parmeter reassigned to the plaintiff. Controversy arose as to the admissibility of the document purporting to be a reassignment from Parmeter to plaintiff, and that instrument, identified as Plaintiff's Exhibit E, was not admitted in evidence by the trial court. Since it is not in the record before this court we will not consider the issue of its admissibility.

Within a few weeks after the transactions above related, Mr. Broomhall became dissatisfied with the operations as they were being conducted by Brockman and his associates. He expressed a belief that he had been deceived by them as to the prospects and value of the mining claims involved and desired to have his money returned. To this end he contacted Ray C. Ludwig, a brother of Arthur Ludwig, one of Brockman's associates, and threatened to bring an action for fraud unless his demands were complied with. This situation led to a conference between Mr. Broomhall, Ray Ludwig and Max G. Ivey, where the matter was explored and the sums advanced by Broomhall in connection with the several leases and for other purposes, were itemized, including a specific reference to the $1,000.00 paid for the Gould lease. These several sums totaled $2468.25, and it was proposed by Ivey that if Mr. Broomhall would accept this amount in full satisfaction and release of all his interests in the venture, he, Ivey, would undertake to raise the money. This meeting occurred during the last of April or the first few days of May 1952, little more than a month after Broomhall first became interested in the uranium leases. At that time Mr. Broomhall declined to accept the amount offered and in addition expressed a desire to retain an interest in the Gould lease. He was told by Ludwig and Ivey that if he wished the return of his money he would have to release everything, including the Gould lease.

Following this meeting Mr. Broomhall wrote letters to parties in South Dakota, and himself made a trip to

Hot Springs in that state, near which the properties were located. The trip and inquiries apparently persuaded him that his best course was to settle the dispute, as upon the day after his return, May 9, 1952, he again contacted Ray Ludwig and advised him that he would release his claims against Brockman and Arthur Ludwig for a cash settlement. Ray Ludwig thereupon advised Ivey who arranged to obtain $2500.00, which he delivered to Ray Ludwig in the form of a bank check. Ludwig took the check to the office of Richard J. Simon, counsel for defendant here, where Simon's check for $2500.00 was drawn, payable to the order of Walter L. Broomhall. Mr. Simon not being available at that time, his secretary and Ludwig undertook to prepare what they believed to be a sufficient release and reassignment to the Edgemont Mining Company of all Broomhall's interest in the several mining leases involved, including the Gould lease. At this time the Edgemont Mining Company was in the embryo stage and was not actually incorporated until June 11th following. The document mentioned was prepared upon a standard printed form of general release and recites that in consideration of the sum of $2500.00 to him in hand paid, Broomhall "remises, releases and forever discharges" the Edgemont Mining Company from any and all claims and demands, etc., which he has or ever had against the company, and specifically refers to the several mining properties in which Broomhall had acquired an interest, including the Gould lease. Broomhall signed and acknowledged the document and accepted and cashed the check for $2500.00. At that time, however, according to his testimony, he didn't read all of the release but did object to any attempt to include the interest in the Gould lease. Later Mr. Broomhall was asked to execute regular assignments for all the mineral claims in which he had had any interest and he did so except for the Gould lease.

It is contended by defendant that the alleged interest

of Mrs. Broomhall in the Gould lease was not revealed to the defendant or to any of its officers or parties in interest by Broomhall, the plaintiff, or anyone else, until long after the settlement had been effected, even though her name appeared in print on all checks drawn by Mr. Broomhall on their joint account. From this it is argued that the assignment from Mr. Broomhall to his wife (the plaintiff) was an afterthought and not a bona fide transaction, and that from the facts and circumstances the conclusion is justified that it was not prepared until after May 9, 1952.

On August 8, 1952, Brockman assigned all of the leases acquired previously thereto, including the Gould lease, to the Edgemont Mining Co., Inc., which, as we have observed, was incorporated on June 11th preceding.

Some two years after the settlement between Broomhall and the representatives of the mining company this action was filed.

Upon these facts the trial court found that the release of May 9, 1952, conveyed all the right, title and interest that Mr. Broomhall, or his wife, the plaintiff, ever had in the Gould lease. This upon the premise that:

" * * * the acts of the husband were the same as that of the wife; that she relied on him, and the assignment of Mr. Broomhall to his wife had no legal effect at all as far as the two were concerned, because they were acting jointly and he was transacting all the business, and the only purpose apparently for the transfer was just for convenience as far as Mr. Broomhall was concerned."

The court then concluded: " * * * that the plaintiff and Walter L. Broomhall have no right, title and interest in the Gould lease, and they are permanently enjoined from asserting any claim or transferring other rights of the Edgemont Mining Co., Inc.," and dismissed the complaint. No ruling was made on the issues presented by the third party complaint.

The foregoing amounts to a finding that in all of the transactions between Broomhall and defendants,

Broomhall was acting as, and was in fact the agent of his wife. While there was no direct testimony on the point, all the facts and circumstances bear out the conclusion of the trial court that in all matters involved the acts of the husband were the acts of the wife. He handled all of the business of the parties, she having little or no knowledge of the details. She knew nothing of how or when the several documents were executed or recorded and testified that she "left everything to Walter." The agency of one spouse to act for the other may be established by the circumstances without proof of an express authorization, and may be proved by less convincing evidence than would be required to establish such agency between strangers. In *Davinroy v. Thompson* (1959), 169 Cal. App. 63, 336 P. (2d) 1028, it is said:

"A husband and wife may act as agent for one another. Such agency may be proved by circumstantial as well as direct evidence, and may be shown by less evidence than in other kinds of agency."

And a wife may be estopped to deny the agency of her husband, see *Boyd v. McElroy* (1940), 105 Colo. 527, 100 P. (2d) 624.

The record here is ample to support the trial court's conclusion that under the evidence the plaintiff was not entitled to recover. The judgment is affirmed.

MR. JUSTICE DAY and MR. JUSTICE DOYLE not participating.